# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| MICHAEL KELLY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:14-cv-02275-JEO |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Michael Kelly brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits and Supplemental Security Income ("SSI"). (Doc. 1).[1] The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference. The parties have consented to the jurisdiction of this court for disposition of the matter. (Doc. 10). *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a). Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to reversed and remanded.

---

[1]References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

## I. PROCEDURAL HISTORY

On June 10, 2010, Kelly protectively filed an application for a period of disability and disability insurance benefits. (R. 16, 86-91).[2] On July 28, 2010, he protectively filed an application for SSI. (R. 16, 1196-99). He alleged that he was disabled and unable to work due to a lower back injury. (R. 106). Following the denial of his applications by the State Agency (R. 33-34, 1200-01), Kelly requested a hearing before an Administrative Law Judge ("ALJ"). (R. 67). The hearing was held on December 11, 2012. Kelly, his counsel, and a vocational expert attended the hearing. (R. 1202-24). The ALJ issued a decision on February 22, 2013, finding that Kelly had not been disabled since June 11, 2010, his alleged disability onset date.[3] (R. 16-24).

Kelly requested the Appeals Council review the ALJ's decision. (R. 12). The Appeals Council denied Kelly's request for review on September 29, 2014. (R. 8-10). On that date, the ALJ's decision became the final decision of the Commissioner. Kelly then filed this action for judicial review under 42 U.S.C.

---

[2]References herein to "R.__" are to the page numbers of the administrative record.

[3]In Kelly's applications for disability insurance benefits and SSI, Kelly alleged a disability onset date of April 18, 2008. (R. 86, 1196). The administrative record does not reflect that he ever amended his onset date to June 11, 2010. However, the ALJ stated in his decision that Kelly was alleging disability beginning June 11, 2010 (R. 16), and both parties–including Kelly himself–have stated the same in their respective briefs. (*See* Docs. 13 & 14). Accordingly, for purposes of this opinion the court will treat June 11, 2010, as Kelly's alleged onset date.

§ 405(g).  (Doc. 1).

## II.  STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed.  The function of the court is to determine whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were applied.  *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.*  It is "more than a scintilla, but less than a preponderance."  *Id.*

The court must uphold factual findings that are supported by substantial evidence.  However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied.  *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision.  *See Cornelius v.*

*Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and SSI under the Social Security Act, a claimant must show the inability to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3); 42 U.S.C. § 1382c(a)(3)(D).

Determination of disability under the Social Security Act requires a five step analysis.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).  Specifically, the Commissioner must determine in sequence:

> whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in light of his residual functional capacity; and (5) can make an adjustment to other work, in light of his residual functional capacity, age, education, and work experience.

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014)[4] (citing 20 C.F.R. § 404.1520(a)(4)).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"  *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the [Commissioner] to show other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).  The Commissioner must further show that such work exists in the national economy in significant numbers.  *Id.*; *Evans*, 551 F. App'x at 524.

## IV.  FACTS[5]

Kelly was initially diagnosed with degenerative disc disease in 2005.  (R. 200).  An MRI revealed disc herniation at L4-5.  (*Id.*)  Kelly underwent a partial hemilaminectomy and discectomy in September 2005, which by his own report relieved "100%" of his pain.  (R. 200, 209).

---

[4]Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

[5]As discussed in Section V below, the ALJ found that Kelly had both a back impairment and chronic obstructive pulmonary disorder (COPD).  Kelly's brief, however, focuses solely on his back impairment and contains no arguments related to his COPD.  Accordingly, this summary of the facts does not include a discussion of Kelly's COPD.

In January 2008, Kelly re-aggravated his back condition when he fell at work. (R. 194). An MRI of his lumbar spine in February 2008 revealed "a moderate to large amount of enhancing scar about the left aspect of the spinal canal and in the paraspinal tissues posteriorly and the posterior aspect of the spinal canal," along with a "small recurrent protruding disc at L4-5" and a "[s]light broad-based bulging L5-S1 disc." (R. 607-08). Kelly received workers' compensation and underwent extended treatment with Genesis Healthcare System, including epidural steroid injections. (R. 200-966).

Kelly was released back to work in 2009, subject to the following restrictions: no lifting or carrying over 20 pounds; no climbing stairs or ladders; no stooping, bending, or crouching; no reaching above shoulder level; no prolonged walking; and limited static standing.[6] (R. 208, 217, 239, 255). Although Kelly was released back to work, it does not appear that he ever went back to work. According to his disability application and disability report, he last worked on April 18, 2008, and his earnings record reflects no earnings after 2008. (R. 86, 97-98, 106). His workers' compensation ended on December 29, 2009. (R. 86).

---

[6]It appears from the medical records that Kelly was authorized to return to work as early as January 2009. (R. 238). However, his estimated return-to-work date changed over the next several months; as late as May 2009 his return-to-work date was still being estimated. (R. 255). His work restrictions, however, remained the same.

In March 2010, Kelly was involved in a motor vehicle accident, which he claims exacerbated his back pain. (R. 986). X-rays taken in June 2010, close to the time of Kelly's alleged onset date, revealed degenerative disc disease at L4-5 and minimal degenerative disc disease in the thoracic spine. (R. 1001-03).

On September 30, 2010, Kelly was examined by Dr. Mark Weaver, a consultative physician. Dr. Weaver assessed Kelly with "[p]robable chronic low back and radicular lower extremity pain, etiology unknown, status post L4-L5 diskectomy without fusion by medical history." (R. 1018). He concluded that Kelly would "probably be limited in the performance of physical activities involving sustained sitting, standing, walking, climbing, reaching, lifting and carrying" but would "probably be capable of performing physical activities involving handling objects, hearing, speaking, following directions, and travel." (*Id.*)

On October 13, 2010, C.E. Hinton, a state agency medical consultant, provided a physical residual functional capacity assessment of Kelly.[7] (R. 25-32). He determined that Kelly could perform a limited range of light work with the following postural limitations: frequent climbing of ramps and stairs; occasional

---

[7]Residual functional capacity ("RFC") is the most a claimant can do despite his or her impairment(s). *See* 20 C.F.R. §404.1545(a)(1).

climbing of ladders, ropes, and scaffolds; and occasional balancing, stooping, kneeling, crouching, and crawling. (R. 26-27).

Over the next two years, Kelly received treatment for his back pain at Family Health Care. (R. 1088-95, 1108-32, 1167-71, 1174-95). He was prescribed a number of different medications for his pain, including Motrin, Flexeril, Ultram, and Percocet. (R. 1090-93, 1108-27). The records do not reflect that he was ever referred to an orthopaedic specialist or that he was ever recommended for further back surgery.

On February 6, 2012, Kelly was examined by Dr. Clarke Woodfin, another consultative physician. (R. 1096-98). Dr. Woodfin assessed Kelly with "[l]ow back pain with radicular element." (R. 1098). He opined that Kelly "should be able to lift and carry 20 lbs. occasionally..., and sit, be on his feet, and walk frequently." (*Id.*) Dr. Woodfin commented that a person with an "avoidance-type" back should "get along fairly well" if he "avoids frequent bending and heavy lifting," but noted that Kelly's back was "definitely worse than that." (*Id.*)

On February 15, 2012, Dr. Robert Heilpern, another state agency medical consultant, performed a second physical RFC assessment of Kelly. (R. 1099-1106). He opined that Kelly could perform a limited range of light work with the following postural limitations: frequent climbing of ramps and stairs; no climbing

of ladders, ropes, and scaffolds; and frequent balancing, stooping, kneeling, crouching, and crawling. (R. 1100-01).

At the hearing before the ALJ, Kelly rated his pain at a level of eight out of ten with medication, with associated numbness down the left side of his left leg. (R. 1210). He rated his pain at a level of ten out of ten without medication, even though the ALJ explained that he considered a rating of ten to equate to "holding your hand in [a] fire, and it's melting." (*Id.*) Kelly testified that he spends most of the day lying down due to his pain. (R. 1214). He said that he can stand for about 15 minutes to do the dishes or to cook, but then needs to rest for about 45 minutes. (R. 1215). Similarly, he said that he can do household chores such as vacuuming for about 20 minutes before needing to lie down. (*Id.*) Kelly testified that he can walk about 100 yards before needing a break and sit for about 20 minutes before it becomes uncomfortable. (R. 1212-13). He said that it is hard for him to pick up anything off of the floor because it is hard for him to bend over. (R. 1213).

## V.  FINDINGS OF THE ALJ

Kelly was 47 years old on his alleged onset date and 50 years old at the time of his hearing before the ALJ. (R. 23, 1206). He has a general equivalency degree and past relevant work experience as a stocker clerk, asbestos specialist, asbestos supervisor, pizza delivery person, and basket maker. (R. 1219-20).

9

The ALJ found that Kelly had severe impairments of a history of surgery at the L4/L5 level and COPD, but that his impairments, alone and in combination, did not meet or medically equal the severity of one of the listed impairments in the Listings.[8] (R. 18-19). The ALJ then found that Kelly had the RFC to perform light work, subject to the following limitations: he can frequently climb ramps and stairs, but should never climb ladders, ropes, or scaffolds; he can frequently balance, stoop, kneel, crouch, and crawl; he should avoid concentrated exposure to extreme heat and cold; he should avoid unprotected heights and dangerous machinery; and he should not work in concentrations of dust, fumes, or gases. (R. 19).

Based on the testimony of the vocational expert, the ALJ determined that Kelly could perform his past relevant work as a basket maker. (R. 22-23). Alternatively, the ALJ found that there are other jobs in the national economy that Kelly would also be capable of performing. (R. 23-24). The ALJ thus concluded that Kelly was not disabled from June 11, 2010, through the date of the decision. (R. 24).

## V. DISCUSSION

Kelly argues that the Commissioner's decision should be reversed and

---

[8]The Listings are located at 20 C.F.R. pt. 404, subpt. P, app. 1.

remanded because the ALJ did not properly assess and credit his testimony of disabling back pain. (Doc. 13 at 3-10). "In order to establish a disability based on testimony of pain and other symptoms, [a] claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Barnhart*, 284 F.3d at 1225; *see* 20 C.F.R. §§ 404.1529(a) and 416.929(a); SSR 96-7p, 1996 WL 374186 (July 2, 1996). If the claimant establishes that he has an impairment that could reasonably be expected to produce his alleged symptoms, the ALJ must evaluate the intensity and persistence of the alleged symptoms and their effect on the claimant's ability to work. *See* 29 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96-7p.

Here, the ALJ determined that Kelly's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that his statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (R. 20). The ALJ noted that Kelly's "allegedly disabling back impairment was present prior to the alleged onset date" of June 11, 2010, and found that "[t]he fact that the impairment did not prevent [Kelly] from working strongly suggests that it would not prevent current work."

11

(*Id.*)  He further found that Kelly's "routine and conservative treatment history since the alleged onset date supports his allegations of back pain, but not to the degree of severity alleged."  (R. 21).  The ALJ also found that Kelly's activities of daily living were "inconsistent with [his] allegations of disabling pain and dysfunction."  (R. 22).  Finally, the ALJ noted that "not one of the medical sources of record has offered an opinion that [Kelly] has limitations greater than those stated in [the ALJ's RFC finding] ..., much less that [Kelly] is restricted from the performance of work."  (*Id.*)

Kelly argues that the ALJ improperly discounted his testimony of pain and failed to fully develop the record.  He agrees that the record documents a "long history of back pain," but argues that the ALJ improperly based his "negative credibility finding" on the fact that he returned to work following his surgery in 2005.  (Doc. 13 at 5).  He contends that the evidence reflects "a progression of back pain as a result of reinjuring his back in a fall and then in a motor vehicle accident."  (Doc. 13 at 5).  Kelly similarly contends that the ALJ "mischaracterized the longitudinal medical evidence which documents [his] complaints of debilitating pain, treatment for the same and physical examinations documenting the presence of pain."  (*Id.* at 8).  Lastly, Kelly argues that the ALJ erred when finding that his reported activities of daily living were inconsistent

12

with his allegations of disabling pain and dysfunction. (*Id.* at 9).

After carefully reviewing the record, the court concludes that the case is due to be remanded to the Commissioner for reconsideration of the ALJ's RFC finding and corresponding determination that Kelly's statements concerning the intensity, persistence, and limiting effects of his back pain were not entirely credible.

**A.     The ALJ's RFC Finding**

As noted, the ALJ found (in part) that Kelly had the RFC to perform light work and to frequently climb ramps and stairs and balance, stoop, kneel, crouch, and crawl. (R. 19). In making this finding, the ALJ stated that he considered the medical source opinion evidence to be "a major factor in assessing [Kelly's] limitations and in evaluating the credibility of his subjective complaints." (R. 22). He stated that "not one of the medical sources of record" had offered an opinion that Kelly had limitations greater than the limitations in his RFC finding. (R. 22). The record, however, reflects that Dr. Woodfin, the consultative physician who most recently examined Kelly in February 2012, opined that Kelly's back was "definitely worse" than an "avoidance-type" back, which he defined as a back that would allow the individual to "get along fairly well" if he avoided "*frequent* bending and heavy lifting." (R. 1098 (emphasis added)). In other words, even if Kelly simply had an avoidance-type back, he would still need to avoid frequent

bending (and heavy lifting) in order to function fairly well. Yet the ALJ found that Kelly–whose back condition was "definitely worse" than an avoidance-type back–could "frequently" stoop and crouch, actions that involve bending.[9]

Moreover, as the ALJ notes elsewhere in his decision, when Kelly was dismissed from workers' compensation treatment in 2009 and authorized to return to work, his medical authorization included the following express limitations: *no* climbing stairs or ladders and *no* stooping, bending, or crouching. (R. 20 (emphasis added)). The following year Kelly was involved in an automobile accident. As Kelly argues in his brief, the longitudinal medical evidence reflects his ongoing complaints of severe, worsening pain following his accident, his treatment for the same, and confirmation of his severe degenerative disc disease, all of which supports his allegations of debilitating pain. *See* SSR 96-7p, 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements."). In any event, Kelly's

---

[9]*See* Disability Report (Adult) Form SSA-3368, explaining that to "stoop" is to "[b]end down & forward at the waist" and that to "crouch" is to "[b]end legs & back down & forward." (R. 108).

treatment records following his accident certainly do not reflect that his back impairment and back pain improved to such an extent that he was able to frequently climb stairs and frequently stoop and crouch, as the ALJ determined in his RFC finding. If anything, the records reflect that his back condition and back pain worsened.

The court acknowledges that Dr. Heilpern, the state agency consultant who provided an RFC assessment of Kelly in February 2012, opined that Kelly could frequently climb ramps and stairs and frequently balance, stoop, kneel, crouch, and crawl.[10] (R. 1101). For the reasons discussed above, the court finds that the record does not support these postural limitation findings. In this regard, the court notes that Dr. Heilpern cited Dr. Woodfin's medical source statement that an "avoidance-type back" is one where the individual should get along fairly well if he avoids frequent bending and heavy lifting, implying that Kelly had such a back impairment. (R. 1105). Dr. Heilpern omitted the rest of Dr. Woodfin's statement–that Kelly's back was "definitely worse" than an avoidance-type back. The court also notes that even the ALJ assigned only "some weight" to Dr. Heilpern's opinion, noting that the opinion did not adequately address the

---

[10]The court notes that Kelly's initial RFC assessment, performed by C.E. Hinton in October 2010, found that Kelly could only occasionally balance, stoop, kneel, crouch, and crawl. (R. 27).

environmental limitations caused by Kelly's COPD.  (R. 22).

Based on his RFC finding and the testimony of the vocational expert, the ALJ found that Kelly could perform his past work as a basket maker as well as a number of other jobs including usher, sandwich board carrier, and warehouse scheduler.  (R. 23-24).  The court suspects that Kelly might very well be able to perform those jobs even if his postural limitations were more restricted than the limitations assigned by the ALJ.  The court, however, is unwilling to make that determination based on the current record.  For instance, the job of basket maker, as described in the Dictionary of Occupational Titles (DOT No. 669.685-014), would appear to involve minimal, if any, stooping, but Kelly's work history report indicates that while employed as a basket maker he spent two hours a day stooping (and six hours a day climbing, which does not seem plausible).  (R. 131).  In any event, given that the ALJ's questions to the vocational expert were premised on his RFC finding and that aspects of the finding are not supported by the record, the case is due to be remanded for further consideration of Kelly's RFC and further testimony from the vocational expert.

**B.    Kelly's Ability to Work Prior to His Alleged Onset Date**

The ALJ also discredited Kelly's allegations of disabling pain because his impairment did not prevent him from working prior to his alleged onset date of

June 11, 2010, which "strongly suggest[ed] that it would not currently prevent work." (R. 20). While it is undisputed that Kelly's back impairment existed long before his alleged onset date and that Kelly returned to work following his back surgery in 2005, the court notes that Kelly has not worked since April 18, 2008, a few months after he re-injured his back at work. He was released to return to work in 2009, but apparently he never did so. The record does not reflect why Kelly has not worked since April 2008 even though he now contends that he did not become disabled (at least for purposes of his Social Security disability claim) until June 2010. He initially contended in both his application for disability insurance benefits and his application for SSI that his disability onset date corresponded with his last day of work in April 2008; no explanation appears in the record as to when or why he moved the date forward more than two years despite not having worked during that period. In addition, as discussed above, Kelly's medical authorization to return to work in 2009 included more restricted postural limitations than those assigned by the ALJ. A more further development of the record on the issue of Kelly's ability to work prior to his alleged onset date is needed.

## C. Kelly's Activities of Daily Living

Finally, Kelly challenges the ALJ's finding that his reported activities of daily living are inconsistent with his allegations of disabling pain. Kelly argues

that his ability to perform "the limited activities noted by the ALJ," such as his ability to wash dishes, cook, and vacuum for short periods of time, does not rule out the presence of disabling pain. (Doc. 13 at 9-10). He cites *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997), for the holding that "participation in daily activities of short duration, such as housework or fishing," do not disqualify a claimant from disability. The ALJ, however, did not disqualify Kelly from disability based solely on his activities of daily living, nor did he rely solely on Kelly's daily activities in discrediting his pain allegations. Rather, the ALJ considered Kelly's daily activities in conjunction with the other evidence in the record, and it was proper for him to do so. *See* 29 C.F.R. §§ 404.1529(c)(3)(i) and 416.929(c)(3)(i) (factors relevant to a claimant's symptoms, such as pain, include daily activities); *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) ("The regulations do not ... prevent the ALJ from considering daily activities at the fourth step of the sequential evaluation process."). Although the court has concluded that the case is due to be remanded for the reasons previously discussed, the court finds no error in the ALJ's consideration of Kelly's activities of daily living.

D.   **Equal Access to Justice Act**

To the extent that Kelly requests that the court find that the position of the

United States was not substantially justified, the court declines to do so.  *See* 28 U.S.C. § 2412(d).  To be substantially justified, the Commissioner's position must have "a reasonable basis in both law and fact."  *United States v. Jones*, 125 F.3d 1418, 1425 (11th Cir. 1997) (citations and internal quotation marks omitted).  The mere fact the case is being remanded to the Commissioner does not automatically establish that her position was not substantially justified.  *Reeves v. Bowen*, 841 F.2d 383, 385 (11th Cir. 1988) (per curiam).

The foregoing discussion of the merits of this appeal demonstrate that the Commissioner's position was reasonable in law and fact.  The court finds that her position was substantially justified.

## VI.  CONCLUSION

For the reasons set forth above, the undersigned concludes that the Commissioner's decision is due to be reversed and remanded for further proceedings consistent with this opinion.  An appropriate order will be entered separately.

**DONE,** this the 25th day of March, 2016.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge